UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MARTHA STANLEY** | ) |
| | ) |
| v. | ) NO. 3:03-0284 |
| | ) JUDGE ECHOLS |
| **WILSON COUNTY, et al.** | ) |

## MEMORANDUM

Pending before the Court is Defendant Brian Hughey M.D.'s ("Dr. Hughey's") Motion for Summary Judgment (Docket Entry No. 172), to which Plaintiff has responded in opposition (Docket Entry No. 183), and Defendant Dr. Hughey has replied (Docket Entry No. 191).[1]

## I. FACTS

This case arose when Anthony Wayne Stanley ("Stanley") died shortly after being released from the Wilson County Jail. His sister, Martha Stanley, as next-of-kin, sued Wilson County and various individuals, including Dr. Hughey who is associated with Defendant Hardie V. Sorrells, M.D. ("Dr. Sorrells"), a physician who contracted with Wilson County to provide medical care to the jail inmates. The claims against Dr. Sorrells were dismissed on summary judgment (Docket Entry No. 101). The claims against the

---

[1] Dr. Hughey has also filed a Motion for Oral Argument on Defendant's Motion for Summary Judgment (Docket Entry No. 192). Because the Court finds that oral argument is unnecessary based upon the extensive briefing which as been filed, that Motion will be denied.

1

remaining Defendants were dismissed after the parties reached a settlement (Docket Entry No. 179). Only claims for medical malpractice/negligence under state law and deliberate indifference under the Constitution remain against Dr. Hughey.

In support of his Motion for Summary Judgment, Dr. Hughey has filed a "Concise Statement of Undisputed Material Facts." That concise statement consists of two statements of "fact":

> (1) Dr. Hughey complied with the recognized standard of acceptable professional practice applicable to his care and treatment of Anthony Wayne Stanley at all times he provided care and treatment to Anthony Wayne Stanley; and
> (2) Nothing Dr. Hughey did or did not do negligently caused Anthony Wayne Stanley to suffer any injury that would not otherwise have occurred.

(Docket Entry No. 172 at 1-2). Plaintiff denies these allegations. To place Dr. Hughey's contentions into perspective, some review of the underlying facts is necessary.

Stanley, an alcoholic, was frequently incarcerated in the Wilson County Jail. On September 29, 2002, Stanley was arrested on a failure to appear warrant and booked into the jail. According to Plaintiff's Third Amended Complaint, Stanley was visibly intoxicated and almost immediately started to exhibit signs of alcohol withdrawal.

2

On October 2, 2002, fellow inmates told guards that Stanley appeared to be going into the DT's, i.e. delirium tremens. Instead of taking Stanley to the hospital, Defendant jailers Chris Vance and Jim Rich took Stanley to the booking area and placed him in a "detox tank." Defendant Lieutenant Edward Fitzpatrick ("Lt. Fitzpatrick") called Dr. Sorrells' office "to get something for the DT's." Lt. Fitzpatrick spoke with the receptionist, Jennifer Crooke. Crooke has no medical training.

Crooke took a message which stated "Anthony Stanley, going through DT's, needs patch, won't take pills, getting real bad." (Hughey Depo. Ex. 1). That note was given to Dr. Hughey because Dr. Sorrells was out of the office at that time and Dr. Hughey covered for Dr. Sorrells, including medical requests for inmates at the jail. Dr. Hughey looked at the message and then wrote in the margin, "Catapres TTS .1 milligrams." Dr. Hughey then placed the note in his outgoing box, where it was picked up by his staff.[2] At the time Dr. Hughey made his notation, he knew that Dr. Sorrells intended to go to the jail to treat inmates within the next couple of hours.

A prescription was called into the Del Mar Medical Pharmacy for Catapres-TTS (clonidine) patches. A deputy from the jail went to the pharmacy to obtain the prescription.

---

[2] Approximately every five minutes, someone on Dr. Hughey's staff emptied the outbox.

3

At some point during this period, jailers observed Stanley hallucinating and talking to people who were not there.  Stanley began pulling the filling out of his mattress and ramming the windows of the cell with his shoulder because he thought his cell was on fire.  Stanley was observed to have blood on his elbow and there was blood on the cell wall.  Two jailers applied a clonidine patch to Stanley.

Stanley began experiencing seizures.  Nevertheless, he was released by a Commissioner on his own recognizance and an ambulance was called.  Stanley was taken to the hospital.  He died in intensive care the next day, after experiencing multiple organ failure.

## II.  **STANDARD OF REVIEW**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).  The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met.  See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986).  The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington,

4

205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

Dr. Hughey's Motion for Summary Judgment is relatively straightforward. He claims Plaintiff has insufficient evidence to present a jury question on the issue of medical negligence and as a consequence any medical malpractice claim and any deliberate indifference claim necessarily fails. Despite the discrete issues presented by the Motion, Plaintiff has filed a 41-page brief in

5

opposition.  Many of the arguments contained in that brief relate to issues not even argued by Dr. Hughey, such as whether, at the time of the events, he was acting under color of state law. Regardless, it is clear that summary judgment is appropriate under the facts and record in this case.

    **A.  Medical Malpractice/Negligence Claim**

To prevail on a medical malpractice claim under Tennessee law, it is incumbent upon the Plaintiff to show "the recognized standard of acceptable professional practice," that "the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard," and that "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." T.C.A. § 29-26-115.  "This statute codifies the common law elements of negligence – duty, breach of duty, causation, proximate cause, and damages." <u>Kilpratrick v. Bryant</u>, 868 S.W.2d 594, 598 (Tenn. 1993).

In this case, Plaintiff has presented insufficient evidence to present a jury question on whether Dr. Hughey complied with the applicable standard of care.  Plaintiff also has presented insufficient proof to show that as a proximate result of Dr. Hughey's action or inaction Anthony Stanley suffered injuries which would not otherwise have occurred.

"[E]xpert testimony is an essential requirement in all but the most obvious cases involving allegations of medical malpractice."

6

Godbee v. Dimick, 213 S.W.3d 865, 881 (Tenn. Ct. App. 2006). "Plaintiffs who are unable to produce an expert affidavit of their own face almost certain dismissal of their complaint because the physician has effectively negated an essential element of their case." Kenyon v. Handal, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003). Thus, "unless the alleged malpractice is within the common knowledge of laymen, . . . expert testimony is required to establish negligence and proximate cause." Ayers v. Rutherford Hosp., Inc., 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984).

"Before the 'Common Knowledge Rule' comes into play, it must be shown that the malpractice was particularly egregious." Casson v. Bell, 1994 WL 27022 at *2 (Tenn. Ct. App. 1994). An example of such a situation is where a surgeon leaves a sponge in a patient which "any lay person would know . . . is negligence." Ayers, 689 S.W.2d at 160.

In this case, it can hardly be said that the proper method of responding to someone who is undergoing acute alcohol withdrawal or is experiencing delirium tremens is within the common knowledge of laymen. Plaintiff has no independent expert testimony to establish the appropriate protocol for responding to such a situation. Nevertheless, Plaintiff claims she can establish the proper standard of care through Dr. Hughey's own deposition testimony.[3]

---

[3]Courts have split on the issue of whether a defendant physician may be used to establish the standard of care. However, the Tennessee Court of Appeals has indicated that a plaintiff may

7

In his deposition, Dr. Hughey was asked about the appropriate treatment for one undergoing alcohol withdrawal and/or delirium tremens. He admitted that a person presenting signs of delirium tremens presents an emergency situation and it is important to know when the patient had his last drink. He indicated that the standard of care for treatment of alcohol withdrawal or delirium tremens is "fluid resuscitation, benzodiapazenes and/or clonidine and/or barbiturates." (Hughey Depo. at 49-50). He also indicated that clonidine is contraindicated in patients suffering from hypotension and thus it would be prudent to know the patient's blood pressure and vital signs. Ideally, a physician will also want a neurological examination of the patient.

While these may appear to be "admissions," it is important to note that Dr. Hughey prefaced his remarks by saying "[t]here is no specific standard of care for the treatment of alcohol withdrawal or DTs" and "that there is no formula that one follows rigidly for the treatment of alcohol withdrawal or delirium tremens." (Hughey Depo. at 43, 49). Dr. Hughey also testified that clonidine is not contraindicated for treating alcohol withdrawal. When specifically asked on cross-examination whether he complied with the standard of care in treating Stanley, Dr. Hughey said "yes." He also testified that it is not possible to always see a patient and that

---

"examine his doctor-opponent as freely and fully as he could any other expert witness." Waterman v. Damp, 2006 WL 2872432 at **9-10 (Tenn. Ct. App. 2006).

8

prescriptions are sometimes called in over the phone, even though the patient has not been seen.

Even when Dr. Hughey's deposition is read in a light most favorable to Plaintiff, there is no triable issue in this case. At most, his testimony can be read as suggesting that there are approaches different than the one he took when treating a patient who is apparently undergoing alcohol withdrawal. However, "[i]t is well settled that where the treatment or procedure is one of choice among competent physicians a physician cannot be held guilty of malpractice in selecting the one which, according to his best judgment, is best suited to the patient's needs." Ball v. Mallinkrodt Chemical Works, 381 S.W.2d 563, 566 (Tenn. Ct. App. 1964). Indeed, "[t]he principle is so well established that a review of the authorities is superfluous." Id.; see, Massignale v. Lee, 2005 WL 990557 (Tenn. Ct. App. 2005)(quoting Ball and affirming directed verdict where plaintiff's expert agreed that some surgeons used mesh, while others did not, in repairing hernias).

Further, Dr. Hughey's actions or inactions must be placed in context. He received a note from a jailer that indicated an inmate was in "DT's" was "getting bad" and needed a patch. He also knew that Dr. Sorrell was going to the jail to treat inmates within the next few hours. Thus the critical inquiry is whether Dr. Hughey's prescription of a clonidine patch in these circumstances was

9

outside the standard of appropriate medical care and there is simply no expert testimony which would suggest that it was not.

Plaintiff also makes much of the fact that Dr. Hughey admitted in his deposition that he did not recall reviewing any written policies relating to the medical care of inmates, did not discuss the medical care of inmates or guidelines related thereto with the sheriff or anyone connected with Wilson County, was not familiar with the Commission on Correctional Healthcare or American Corrections Association, and learned about treating alcohol withdrawal primarily from medical textbooks. While all of that may be true, it is largely irrelevant. The critical question is whether Dr. Hughey was negligent when he prescribed clonidine patches to Stanley under the circumstances presented to him at the time. Plaintiff does not address the facts that Dr. Hughey was not asked to see Stanley and that Stanley was not brought to his office. It is not even clear what Plaintiff believes that Dr. Hughey should have done differently given the situation presented.

Even if Dr. Hughey's deposition could somehow be read as suggesting that he breached the standard of care in his treatment of Stanley, Plaintiff still has insufficient evidence to present a jury question on medical malpractice/negligence. As indicated, to establish medical malpractice, Tennessee law requires a plaintiff to establish that "[a]s a proximate result of the defendant's

10

negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." T.C.A. § 29-26-115.

Tennessee's medical malpractice statute envisions that expert testimony be submitted on both the issue of negligence and proximate cause. Norris v. East Tennessee Children's Hosp., 195 S.W.3d 78, 86 (Tenn. Ct. App. 2005); Ayers, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984). With respect to proximate cause, the expert proof must show that the "physician's negligence more likely than not caused the patient injuries that he or she would not otherwise have suffered." Church v. Perales, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000).

Pure speculation or conjecture is not enough to present a jury question on the issue of causation. Norris, 195 S.W.3d at 86. "Thus, proof of causation equating to a 'possibility,' a 'might have,' 'may have,' 'could have,' is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence in a medical malpractice case." Kilpatrick, 868 S.W.2d at 602. "Causation in fact is a matter of probability, not possibility, and in a medical malpractice case, such must be shown to a reasonable degree of medical certainty." Id.

In this case, it appears to be Plaintiff's position that based upon the sequence of events, a jury could draw the inference that Stanley would have lived with proper medical care. However, as the

11

above discussion makes clear, the mere possibility that a harm resulted from given treatment or the absence of treatment is not enough.

Plaintiff has failed to present expert competent evidence on the critical issues of standard of care and proximate cause. As such, Defendant Hughey is entitled to summary judgment on Plaintiff's medical malpractice/negligence claim.

**B. Deliberate Indifference Claim**

Both convicted prisoners and pretrial detainees may state a claim under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need. Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 602 (6th Cir. 2005). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Miller v. Calhoun County, 408 F.3d 803, 812 (6th Cir. 2005)(citation omitted). Thus, negligence or medical malpractice alone is insufficient to establish deliberate indifference. Perez v. Oakland County, 466 F.3d 416, 423 (6th Cir. 2006).

To establish deliberate indifference, it must be shown that a defendant realized a risk of harm yet consciously disregarded it. "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims[.]" Comstock v.

12

McCrary, 273 F.3d 693, 703 (6th Cir. 2001). "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's need, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Id. Thus, "federal courts are reluctant to 'second guess medical judgments and to constitutionalize claims' sounding in state tort law '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment.'" Ruiz v. Martin, 72 Fed. Appx. 271, 276 (6th Cir. 2003).

In this case, the Court has found that Plaintiff has not produced sufficient evidence to present a jury question on the issue of medical negligence/malpractice. It follows that the same deficiencies preclude submission of this case to a jury on a claim of deliberate indifference. See, Turner v. Miller, 301 F.3d 499, 603 (7th Cir. 2002)(jury's finding that physician was not negligent constituted an adverse finding on a claim of deliberate indifference); Simon v. Miami County Incarceration Facility, 2006 WL 1401645 (S.D. Ohio 2006)(where plaintiff did not provide expert testimony that doctor's care fell below professional standards so as to constitute negligence, he could not recover on the more serious violation of rights implicit in a claim of deliberate indifference).

13

## IV. CONCLUSION

On the basis of the foregoing, Defendant Dr. Hughey's Motion for Summary Judgment (Docket Entry No. 172) will be granted. Dr. Hughey, M.D.'s Motion for Oral Argument on Defendant's Motion for Summary Judgment (Docket Entry No. 192) will be denied. Since all claims against the other Defendants have been dismissed, this action will be dismissed with prejudice.

An appropriate Order will be entered.

_____
Robert L. Echols
United States District Judge